# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-40391

United States Court of Appeals
Fifth Circuit

**FILED**
July 5, 2019

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

GUSTAVO GARCIA-MIRANDA,

Defendant - Appellant

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 4:16-CR-178-1

Before OWEN, SOUTHWICK, and HIGGINSON, Circuit Judges.

PER CURIAM:*

This appeal solely concerns the sentencing of a conspirator in a drug transaction. He argues he should not have been subject to a sentence enhancement for the importation of methamphetamines and was entitled to a sentence reduction for having only a minor role in the conspiracy. We find no clear error in the district court's findings and AFFIRM.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 18-40391

## FACTUAL AND PROCEDURAL BACKGROUND

In May 2016, the Department of Homeland Security received information regarding a multi-syndicated drug trafficking and money laundering organization that was operating in the Dallas and Fort Worth area. Homeland Security's subsequent investigation determined that the organization was importing and distributing drugs from Mexico and smuggling the bulk cash proceeds back to Mexico. A confidential informant called members of the organization to negotiate the purchase of multiple kilograms of methamphetamine on December 13, 2016. Juan Manuel Bustos-Chipres contacted the informant later that day, stating that he was in the Dallas area and available to meet. Bustos-Chipres agreed to meet at a Golden Corral restaurant in Garland, Texas, where he provided to the confidential informant a sample of the methamphetamine. Bustos-Chipres agreed to deliver five kilograms of methamphetamine to the informant the following day.

The next day, the informant called a member of the organization known as Kike, who stated that he had completed the five-kilogram purchase of methamphetamine from his associate, Don Tavo. Kike told the informant that a "person of confidence" would make the delivery, who turned out to be Bustos-Chipres. Bustos-Chipres arrived at the restaurant that was the agreed meeting location with the defendant Gustavo Garcia-Miranda as a passenger. Garcia-Miranda and Bustos-Chipres entered the restaurant together. The informant then called Bustos-Chipres, who exited the restaurant with Garcia-Miranda and drove away. The vehicle was eventually stopped for a traffic violation.

Officers stated that Bustos-Chipres was extremely nervous during the traffic stop. They asked him if there was anything illegal in the vehicle. He repeatedly said "no." He then granted oral permission to search the vehicle. Officers saw a speaker box in the trunk that was unusually heavy, with

2

No. 18-40391

materials inside inconsistent with a speaker.  Bustos-Chipres then exited the vehicle and appeared as though he might flee.  Officers attempted to detain him, and he resisted.  Garcia-Miranda, on the other hand, ran to the vehicle and was observed reaching inside.  Officers ordered him to remove his hand from the vehicle and to lie down.  He complied.  In the speaker box were 5.93 kilograms of "Ice," or d-methamphetamine, which a lab tested at 99% purity. Garcia-Miranda stipulated that the amount involved during the term of the conspiracy involved "500 grams or more of a mixture or substance containing a detectable amount of methamphetamine."

Garcia-Miranda pled guilty to one count of conspiracy to possess with intent to distribute methamphetamine in violation of 21 U.S.C. §§ 841, 846. The presentence report ("PSR") determined that Garcia-Miranda's base offense level was 38 pursuant to U.S.S.G. § 2D1.1(c)(1) because the offense involved more than 4.5 kilograms of Ice.  The PSR applied a two-level enhancement pursuant to Guidelines Section 2D1.1(b)(5) because the offense involved the importation of methamphetamine from Mexico, and Garcia-Miranda was not entitled to a mitigating-role adjustment under Section 3B1.2.  After a two-level adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a), Garcia-Miranda's total offense level of 38 and his criminal history category of I yielded an advisory guidelines range of 235 to 293 months of imprisonment.

Garcia-Miranda objected to the PSR on two grounds: the Section 2D1.1(b)(5) importation enhancement was improper because he was not aware that the methamphetamine originated in Mexico;  further, he was entitled to a mitigating role adjustment in part because he was simply Bustos-Chipres's "helper" who rode as a friend.  Garcia-Miranda urged both objections at his sentencing.

At the sentencing hearing, Garcia-Miranda attempted to distinguish existing caselaw concerning whether knowledge of the drug's origin was

required for an importation enhancement. *See United States v. Serfass*, 684 F.3d 548, 551 (5th Cir. 2012). Garcia-Miranda also called Bustos-Chipres as a witness, who testified that Garcia-Miranda was not "involved in [the] arrangement of getting the methamphetamines," had no "input on putting the drugs in the car," and was "merely riding along with [Bustos-Chipres] as some sort of . . . protection." Bustos-Chipres concluded that Garcia-Miranda "was less involved" in the offense than he.

On cross-examination, Bustos-Chipres testified that he did not know who hired him to distribute the nearly six kilograms of methamphetamine. He refused to disclose who gave him the phone number used to contact the informant in the drug distribution. Upon being instructed by the district court to answer the question, Bustos-Chipres refused. The district court noted that Bustos-Chipres could not "pick and choose what he's going to answer." The district court found Bustos-Chipres not to be credible and did not rely on his testimony. The court determined that it defied common sense to believe Garcia-Miranda did not know that the methamphetamine was imported from Mexico.

The district court overruled Garcia-Miranda's objections and adopted the PSR. The court did not grant Garcia-Miranda's request for a mitigating-role reduction. It did, however, calculate Garcia-Miranda's Guidelines range using a two-level reduction through the "safety valve" provisions and a further one-level reduction for acceptance of responsibility, resulting in a total offense level of 35. The district court imposed a sentence of 168 months, at the bottom of the 168 to 210-month Guidelines range.

On appeal, Garcia-Miranda challenges the denial of his request for a mitigating-role adjustment and the application of the importation enhancement.

DISCUSSION

This court reviews "the district court's interpretation of the Sentencing Guidelines *de novo*, and review[s] the district court's factual findings for clear error." *Serfass*, 684 F.3d at 550. "There is no clear error if the district court's finding is plausible in light of the record as a whole." *Id.* (quoting *United States v. Cisneros-Gutierrez*, 517 F.3d 751, 764 (5th Cir. 2008)). We first will review whether the district court erred when it found that Garcia-Miranda was not a minor or minimal participant, then consider the propriety of the two-level importation enhancement.

## I.     *Mitigating Role Adjustment*

Garcia-Miranda argues the district court erred when it did not grant a two-level sentence reduction for having a minor role. Garcia-Miranda claims that the district court's decision should be reviewed *de novo*, because the district court "misinterpreted the guidelines . . . when it relied on factors that were not relevant to Garcia-Miranda's role in the conspiracy." "The determination whether to apply [U.S.S.G. § 3B1.2] is based on the totality of the circumstances and involves a determination that is heavily dependent upon the facts of the particular case." U.S.S.G. § 3B1.2 cmt. n.3(C). When a defendant objected in district court, we review for clear error a district court's finding that a defendant was not a minor or minimal participant. *United States v. Gomez-Valle*, 828 F.3d 324, 327 (5th Cir. 2016).

Section 3B1.2 "provides a range of adjustments for a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant in the criminal activity." § 3B1.2, cmt. n.3(A). In particular, it authorizes a two-level reduction for a defendant who was a "minor participant." § 3B1.2(b). A minor participant is one who is "less culpable than most other participants in the criminal activity, but whose role

5

could not be described as minimal." § 3B1.2, cmt. n.5.  The defendant has the burden of demonstrating his entitlement to a minor role adjustment.  *United States v. Castro*, 843 F.3d 608, 612 (5th Cir. 2016).  A Section 3B1.2 adjustment is not warranted simply because a defendant "does less than other participants."  *United States v. Miranda*, 248 F.3d 434, 446 (5th Cir. 2001).

Garcia-Miranda argues that the evidence demonstrates he was involved in the conspiracy only for a short time, that he was less culpable than a drug courier, that his only role was to ride along with Bustos-Chipres to appear to be protection, that he did not know the amount of the narcotics in the vehicle, nor did he know the terms of the sale.  Garcia-Miranda also argues that the district court relied on improper factors in denying his mitigating role.  These included that he and Bustos-Chipres were both illegal immigrants from Mexico, that they knew each other from Mexico, that they were in the vehicle together, and that he attempted to grab his cell phone from the car when arrested.

Garcia-Miranda also argues that he was less culpable than most other participants, shown to some extent by the fact he received a reduction under the "safety valve" pursuant to Section 5C1.2 of the Guidelines.  Because he described his small role in the offense, and the district court had to have believed that he was truthful to receive the safety valve, he argues entitlement to a reduction for being a minor participant.

We will review the evidence to determine whether the district court's findings were plausible.  *Serfass*, 684 F.3d at 550.  Drug couriers are not necessarily entitled to a mitigating role adjustment.  *See Castro*, 843 F.3d at 612.  Furthermore, the defendant bears the burden of proving by a preponderance of the evidence that a reduction was warranted.  *Id.*  At the sentencing hearing, Garcia-Miranda called Bustos-Chipres to testify, who claimed that Garcia-Miranda had "no input on placing the drugs in the car,"

that he was only there for protection, and that Garcia-Miranda did not arrange for the drugs to be in the car.

On cross-examination, Bustos-Chipres refused to answer the government's questions even after the district court instructed him to answer. The district court found that Bustos-Chipres was not credible nor forthcoming. The district court noted that Bustos-Chipres and Garcia-Miranda were both from Mexico, that they had a previous relationship there, and that they were illegally present in the United States. The district court determined that Garcia-Miranda was minimizing his conduct and not telling "the whole story." The district court stated that Garcia-Miranda was "more involved" than he admitted. There is evidence that Garcia-Miranda accompanied Bustos-Chipres inside the restaurant where the delivery of the methamphetamine was to take place, that they left together after the confidential informant called Bustos-Chipres, and that Garcia-Miranda attempted to recover a cell phone from the stopped vehicle after Bustos-Chipres attempted to flee. The district court also heard that Garcia-Miranda had joint possession of the methamphetamine in the vehicle, and that he was present to provide at least the illusion of protection for Bustos-Chipres. Furthermore, Garcia-Miranda stipulated that he "knew that the amount involved during the term of the conspiracy involved 500 grams or more of . . . methamphetamine."

Based on this evidence, the district court's finding that Garcia-Miranda was not entitled to a mitigating role adjustment was plausible. The evidence allowed the district court to infer that Garcia-Miranda had greater knowledge of the "scope and structure of the criminal activity" and to determine the "nature and extent of the defendant's participation in the commission of the criminal activity." U.S.S.G. § 3B1.2 cmt. n.3(C). The district court therefore did not rely on irrelevant factors when it considered those "non-exhaustive . . . factors" in the Guidelines commentary. *Id.*

No. 18-40391

Furthermore, Garcia-Miranda's evidence was insufficient to overcome his burden of showing that he was substantially less culpable than the average participant. *Castro*, 843 F.3d at 612. The district court explicitly found that Bustos-Chipres, Garcia-Miranda's only witness, was not credible. Because the district court could plausibly have inferred that Garcia-Miranda was more than a minor participant from the government's evidence and the PSR, and Garcia-Miranda failed to present credible evidence establishing the culpability of an average participant and his substantially lower culpability, we find no error in the district court's factual finding. *See id.* at 613.

We discuss one additional detail of this issue. The district court focused on the prior relationship of these two men in Mexico to support that Garcia-Miranda knew of the greater scheme. Garcia had the burden of producing evidence of the nature of the role of an average participant, but the district court completely discredited his evidence. We have indicated the importance of a district court's findings about average participation before assessing whether someone was substantially less culpable than that, and no such findings were made here. *See United States v. Sanchez-Villareal*, 857 F.3d 714, 722 (5th Cir. 2017). In that case, we reversed as the "wisest course" in the absence of findings. *Id.* (quoting *United States v. Cruickshank*, 837 F.3d 1182, 1195 (11th Cir. 2016)). Yet here, because Garcia-Miranda had the burden to show he was below average, and the district court found his one witness had no credibility, there is no evidence to support the reduction. In light of the failure of proof, and despite the absence of findings of what constituted the average, we see no basis for reversal.

Garcia-Miranda's arguments include that the district court's grant of a safety valve constituted an effective finding that Garcia-Miranda was truthful in his representations to the government. He represented to the government that he was simply a passenger in the car with his co-defendant, and that he

8

knew there were drugs in the car but had no involvement in negotiating or delivering the drugs. The grant of a safety valve, though, does not create an entitlement to a mitigating role reduction. The safety valve requires only that he not be "an organizer, leader, manager, or supervisor of others in the offense." *See* U.S.S.G. § 5C1.2(a)(4).

The district court did not err in finding that Garcia-Miranda was not eligible for the mitigating role reduction.

## II.    *Importation Enhancement*

Garcia-Miranda also disputes the two-level enhancement for importation of methamphetamine. Section 2D1.1(b)(5) provides for a two-level enhancement if the offense involved the importation of methamphetamine and the defendant did not qualify for a mitigating role adjustment under U.S.S.G. § 3B1.2, which we addressed above. Garcia-Miranda argues there was no evidence in the record he was involved in the actual importation of the methamphetamine, and he could not have reasonably foreseen that the drugs were imported from Mexico, citing the Guidelines provision concerning "relevant conduct." U.S.S.G. § 1B1.3(a)(1)(B)(iii).

These arguments do not overcome that the Section 2D1.1(b)(5) "sentencing enhancement applies if the offense involved the importation of amphetamine or methamphetamine regardless of whether the defendant had knowledge of that importation." *Serfass*, 684 F.3d at 552. Further, "distribution (or possession with intent to distribute) of imported methamphetamine, even without more, may subject a defendant to the Section 2D1.1(b)(5) enhancement . . . . Because the methamphetamine [the defendant] possessed was imported from Mexico, the enhancement was properly applied." *United States v. Foulks*, 747 F.3d 914, 915 (5th Cir. 2014).

No. 18-40391

We conclude that regardless of what Garcia-Miranda knew, or what he could have foreseen, the fact that the methamphetamine here was imported means that we affirm the two-level importation enhancement.

AFFIRMED.